1

2

3

4

5

6                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
                                        AT TACOMA

7

RICHARD G. TURAY,

8                          Plaintiff,                    CASE NO. C11-5618 BHS

9      v.                                                ORDER ADOPTING REPORT
                                                         AND RECOMMENDATION
10    DSHS, et al.,

11                         Defendants.

12            This matter comes before the Court on the Report and Recommendation ("R&R")

13    of the Honorable Karen L. Strombom, United States Magistrate Judge (Dkt. 35) and

14    Plaintiff's objections to the R&R (Dkt. 36).

15                        I.      PROCEDURAL HISTORY

16            On October 10, 2011, Plaintiff Richard G. Turay ("Mr. Turay") filed a prisoner's

17    civil rights complaint against individual defendants employed by the Special

18    Commitment Center ("SCC") (collectively, "Defendants").  Dkt. 7.  On September 28,

19    2012, Defendants filed motion for summary judgment.  Dkt. 29. Mr. Turay did not file a

20    response while the case was pending before Judge Strombom.

21            On January 10, 2013, Judge Strombom issued the R&R recommending that the

22    Court grant Defendants' summary judgment motion and dismiss all claims with

1  prejudice.  Dkt. 35.  On January 22, 2013, Mr. Turay filed objections.  Dkt. 37.  On

2  January 30, 2013, Defendants responded.  Dkt. 37.  On February 27, 2013, Mr. Turay

3  filed a very belated response to Defendants' prior summary judgment motion.  Dkt. 40.

4  The Court will consider the contents of this response in reviewing the R&R.

5                          **II.    FACTUAL BACKGROUND**

6        Mr. Turay is a resident at the SCC.  Dkt. 7.  His case arises out of an incident at

7  SCC on July 29, 2011 involving a contract worker, an electrician.  *Id.* at 5.  Mr. Turay

8  witnessed the electrician having a heated verbal exchange with other residents living in

9  the Cedar West living unit, allegedly brandishing "what looked like a long screwdriver"

10  and possessing other potentially dangerous tools.  *Id.* at 5.  According to Mr. Turay, when

11  a resident asked the electrician to stop using a noisy tool, the electrician responded to the

12  resident saying, "None, of your business, RAPOS!  Don't talk to me."  *Id.*  At that point,

13  all the residents within earshot "got to their feet and began demanding an apology or

14  insisting" he leave.  *Id.*

15        In relevant part, Mr. Turay claims that Residential Rehabilitation Counselors

16  (RRCs), who are Cedar unit staff, failed to supervise the electrician and to follow their

17  supervisor's instructions thereby violated his Eighth and Fourteenth Amendment rights

18  by submitting him to a "life-threatening situation."  *Id.* at 5.  He also claimed that the

19  Quick Response Team ("QRT"), called by Cedar unit staff to assist with the incident,

20  violated his First Amendment right to assembly because the QRT directed him and other

21  residents gathering around the electrician back to their rooms.  *Id.* at 6.

22

1

III.   DISCUSSION

2        The district judge must determine de novo any part of the magistrate judge's

3 disposition that has been properly objected to.  The district judge may accept, reject, or

4 modify the recommended disposition; receive further evidence; or return the matter to the

5 magistrate judge with instructions.  Fed. R. Civ. P. 72(b)(3).

6 **A.    Objections**

7        Mr. Turay objects to the R&R on several bases.  He argues that he never received

8 Defendants' summary judgment motion post-marked September 28, 2012.   Dkt. 7 at 5.

9 However, in Mr. Turay's subsequently filed response, he seems to indicate that he did

10 receive that copy of the summary judgment motion, stating that he had "misplaced " the

11 motion and "discovered it about a week ago."   Dkt. 40 at 1.

12        Mr. Turay also objects to the R&R and responds to the motion for summary

13 judgment by offering slightly, but not materially, different accounts of the July 29, 1011

14 incident at the SCC, both in his objections and in his response.  Dkt. 7 at 5-6 & 40 at 2-4.

15 His central objections are the RRCs on the Cedar unit were not paying attention, and that

16 the distance between the staff and the location of the incident was greater than a few feet,

17 as Judge Strombom found.  Dkt. 36 at 2. Additionally, Mr. Turay maintains that in the

18 time that it took the QRT to respond to the incident, residents could have been "stabbed

19 or killed by th[e] openly hostile, Canadian sub-contractor, and it is the fault of the

20 S.C.C.'s shoddy management that situations like this occur . . . ."  *Id*. at 3. Finally, in his

21 response, Mr. Turay argues that the SCC staff's failure to have the electrician

22

1    accompanied by an escort while in Cedar unit resulted in a situation that could have "cost

2    someone their life."  Dkt. 40 at 3.

3           In response to Mr. Turay's objections, Defendants argue that while Mr. Turay

4    provides another, somewhat different account of the incident than he originally did,

5    nothing in his supplemental account of events adds anything material to the record.  Dkt.

6    35 at 2.  In fact, Defendants maintain that his objections contain information supporting

7    that summary judgment in their favor was proper.  *Id.*

8    **B.     Receipt of Defendants' Motion for Summary Judgment**

9           In his objections, Mr. Turay claims that he is "unaware of any motion supposedly

10   served in September of 2012."  Dkt. 36 at 2.  On September 28, 2012, the Attorney

11   General's Office ("AGO") mailed Mr. Turay a copy of Defendants' motion for summary

12   judgment along with an accompanying *Rand* notice.  Dkts. 29 at 16 & 30 at 4.  The

13   SCC's incoming legal mail log shows initials next to Mr. Turay's name, which, from the

14   Defendants' perspective, reflects that Mr. Turay initialed the log, confirming receipt of

15   his legal mail from the AGO, which was postmarked September 28, 2012.  Dkts. 37

16   (Declaration of Becky Denny, SCC's Legal Coordinator) & 37-1 (SCC Legal Mail Log).

17   Further, the AGO did not receive as returned mail the pleadings mailed to Mr. Turay on

18   that date.  Dkt. 38 (Declaration of Beverly T. Cox, AGO Legal Assistant).

19          Service of Defendants' summary judgment motion was complete upon mailing,

20   regardless of Mr. Turay's actual receipt thereof.  Fed. R. Civ. P. 5(b)(2)(C).

21   Additionally, Mr. Turay's claim that he never received actual notice of the motion is

22   unconvincing, as the AGO never received any return mail and he does not dispute that the

1  initials on the SCC's legal mail log are not his. Moreover, since Mr. Turay's belated

2  response seems to indicate that it was his mistake in "misplac[ing]" the motion, he

3  appears to confirm that he did indeed receive the Defendant's summary judgment motion

4  post-marked September 28, 2012.

5  **C.     Eighth Amendment**

6         Judge Strombom found that "[a]s a civilly committed person, Mr. Turay's right to

7  safe confinement conditions is protected under the Fourteenth Amendment rather than the

8  Eighth Amendment."  Dkt. 35 at 10.  The Eighth Amendment applies only to persons

9  being punished for criminal law violations, not civilly-committed sexually violent

10 predators.  *See Youngberg v. Romero*, 457 U.S. 307, 325 (1983) (recognizing that the

11 Fourteenth Amendment Due Process Clause, not the Eighth Amendment's prohibition of

12 cruel and unusual punishment, applied to claims of unsafe conditions by civilly

13 committed persons). Mr. Turay has no cognizable claim under the Eighth Amendment.

14 **D.     Fourteenth Amendment**

15        Involuntarily committed persons have a Fourteenth Amendment due process right

16 to be provided with safe confinement conditions. *Youngberg*, 457 U.S. at 325; *Ammons v.*

17 *Washington Dept. of Social & Health Services*, 648 F.3d 1020, 1027 (9th Cir. 2011).

18 According to *Youngberg*, the Constitution requires that officials, in order to protect the

19 committed person's right to safe conditions, exercise professional judgment.  457 U.S. at

20 321-22.  Liability may be imposed for failure to provide safe conditions "when the

21 decision [made] by the professional is such a substantial departure from accepted

22 professional judgment, practice, or standards as to demonstrate that the person

1   responsible actually did not base the decision on such a judgment." *Id*. at 323.  If a

2   defendant exercised such judgment, even if other professionals disagree with the

3   conclusion, no constitutional violation lies.  *Id*.

4        In Judge Strombom's R&R, she found in relevant part:

5        Mr. Turay has not put forth any evidence tending to show that the
         living unit RRCs or supervisor Riconoscuito failed to exercise professional
6        judgment by permitting the electrician to work in the Cedar West dayroom
         living unit within the line-of-sight of living unit staff.  There is also no
7        evidence of what Mr. Turay refers to as a "life-threatening" situation. The
         undisputed evidence reflects that there was an exchange of words, SCC
8        residents started to threaten the electrician, and SCC staff ordered the
         residents back to their room before anything further could happen. The
9        three RRCs station at the Cedar living unit staff desk could maintain visual
         supervision of the Cedar West dayroom from that vantage point and
10       immediately responded to the verbal exchange when it began. ECF No. 31
         (Harris Decl.), Attachment B.  It is undisputed that they did so respond.
11       When the residents refused to comply with RRC Jannsen's order to return
         to their rooms, she directed RRC French to call the QRT to assist in de-
12       escalating the disturbance. *Id*. Mr. Turay acknowledges that multiple RRCs
         were nearby at the time and did, in fact, exercise supervision over the
13       situation by ordering residents back to their rooms. ECF No. 7, at 6-7.

              Mr. Turay has raised no issue of material fact from which it may be
14       reasonably inferred that any SCC employee violated his Fourteenth
         Amendment due process rights. It is undisputed that the SCC employees
15       present exercised their professional judgment to diffuse the situation. No
         more due process is required. See *Youngberg*, 457 U.S. at 321 ("It is not
16       appropriate for the courts to specify which of several professionally
         acceptable choices should have been made.")  Mr. Turay again fails to
17       adequately allege the specific involvement of the four named defendants in
         the alleged violation of his due process rights.  He has not specifically
18       alleged how the living unit RRCs subjected him to a "life-threatening
         situation" with "deliberate indifference" as a result of their alleged failure
19       to follow the unspecified instructions of supervisor Riconoscuito.  ECF No.
         7, at 6-7. Contrary to Mr. Turay's conclusory allegation that the electrician
20       was unsupervised, the living unit RRCs were working at the staff desk of
         the Cedar living unit when the incident occurred and were able to observe
21       the electrician from that vantage point.  ECF No. 31 (Harris Decl.),
         Attachments B and C. Thus, they were immediately able and did, in fact,
22       respond to the incident when it began.

1  Dkt. 35 at 11-12.

2        Despite the assertions Mr. Turay makes in his objections to Judge Strombom's

3  R&R, the Court finds that Mr. Turay has not put forth evidence showing there is a

4  genuine issue of material fact that the actions of the Cedar unit staff or the QRT posed a

5  "life-threatening" situation or that they failed to properly exercise their professional

6  judgment to diffuse the situation.  Although Mr. Turay's objections indicate that Cedar

7  unit staff were about 20 feet from the incident, instead of a few feet, as Judge Strombom

8  found, that staff were "not paying attention" and that the time it took for the QRT to

9  respond put residents in a life threatening situation, given all of the evidence in the

10  record, these assertions do not demonstrate that issues of material fact exist.  Similarly,

11  the claim in Mr. Turay's response that it took the RCCs "two minutes" to respond to the

12  incident and order residents back to their rooms (Dkt. 40 at 3), even if true, does not

13  create a genuine issue of material facts when the evidence is viewed as a whole.

14        The evidence in this case indicates that the entire incident, which was preserved on

15  a video surveillance tape, lasted only six minutes; no physical violence of any kind

16  occurred (Dkts. 31 & 32).  Additionally, by Mr. Turay's own admission, when the

17  volume of the incident rose, the Cedar unit staff checked on the situation; the RRCs

18  ordered the residents to go into lock-down in their rooms, which Mr. Turay refused to do

19  and encouraged others not to do; and staff called the QRT, who, according to Turay,

20  "soon" came and effectively diffused the situation (Dkt. 7 at 5), resulting in everyone

21  "peaceably return[ing] to their rooms" (Dkt. 40 at 3).   Thus, it is clear that several of the

22  Cedar unit staff were located at a vantage point to supervise the electrician, were able to

ORDER - 7

1    and did quickly respond to the incident, and they sought assistance from the QRT when

2    the residents failed to comply with the RRCs' orders.  Under these circumstances, the

3    Court finds that no genuine issue of material fact exists as to whether that conduct of the

4    Cedar unit staff or the QRT fell below a professional standard of care giving rise to a

5    Fourteenth Amendment violation.

6            Having considered the R&R, Plaintiff's objections, and the remaining record, the

7    Court does hereby find and order as follows:

8            (1)     The R&R is **ADOPTED**;

9            (2)     This action is **DISMISSED**;

10           (3)     The Clerk is directed to close this case.

11           Dated this 5th day of March, 2013.

12

13

14                                          BENJAMIN H. SETTLE
                                            United States District Judge

15

16

17

18

19

20

21

22

ORDER - 8